[No. 2615.]

ĽEN. COOK v. THE STATE.

1. PRINCIPAL OFFENDERS—ACCOMPLICES—CHARGE OF THE COURT—CASES APPROVED.—The proper distinction between principal offenders and accomplices in crime is that the acts constituting an accomplice are auxiliaries only, all of which may be and are performed by him anterior and as inducements to the crime about to be committed; whereas the principal offender not only may perform some antecedent act in furtherance of the commission of the crime, but, when it is actually committed, is doing his part of the work assigned him in connection with the plan, and in furtherance of the common purpose, whether he be present when the main object is accomplished or not. See the opinion *in extenso* for a charge of the court on the subject *held* correct. Note also the citation and approval of the cases of *Scales* v. *The State*, 7 Texas Court of Appeals, 361; *Cohea* v. *The State*, 9 Texas Court of Appeals, 173, and *Heard* v. *The State*, 9 Texas Court of Appeals, 1.
2. CHARGE OF THE COURT—CIRCUMSTANTIAL EVIDENCE.—When the inculpatory evidence is wholly circumstantial, it is the duty of the trial court, whether asked or not, to give in charge to the jury the law governing that character of evidence.
3. THEFT—FACT CASE.—See evidence *held* insufficient to sustain a conviction of the accused as a principal in the theft of a horse.

APPEAL from the District Court of Dallas. Tried below before the Hon. G. N. Aldredge.

The indictment charged the appellant with the theft of two horses, the property of John Collier, in Dallas county, on the fourth day of March, 1882. He was convicted, and was awarded a term of seven years in the penitentiary.

John Collier was the first witness, for the State. He testified that he worked his certain sorrel horse the whole of the day on the last Monday in March, 1882, and at night he turned the animal into his lot, from which he was missing next morning. He next saw the animal, eight or nine days later, in Eastland, Eastland county, in possession of the sheriff, who also had George Cook, John Broach and Joe McGee in custody, charged with the theft of this animal. Each of these three parties denied all claim to the animal.

On Tuesday, the day after the horse was lost, the witness learned, upon inquiry, that the defendant and Joe McGee had

left his neighborhood and gone west, bound for Eastland; and he immediately left in pursuit. At Arlington, a point eighteen miles west of his house, the witness heard of his horse from a party of travelers. Following on that road in the direction of Fort Worth, beyond Arlington, the witness overtook Riley Pemberton, a neighbor, who had lost a horse on the same night that the witness lost his. When the witness heard of his and Pemberton's horses, at Arlington, they were reported to be in the possession of two men of whom witness could get no description. Witness and Pemberton next heard of their horses when they had reached a point beyond Fort Worth. Along this route beyond Fort Worth, the witness and Pemberton traced the track of a wagon drawn by a yoke of bulls, and within a day or two came upon a camp near a small creek, which camp had been occupied by four men, having in their possession horses answering the description of those stolen, and a wagon drawn by a yoke of bulls. Reaching a point eight miles distant from Eastland, the roads forked, and the witness took and followed one and Pemberton the other. When the witness reached Eastland, he found Pemberton already arrived. The witness's horse was there in possession of the sheriff. George Cook, John Broach and Joe McGee were there in the custody of the sheriff. The defendant ·was not there, but, knowing that he had a brother-in-law living a few miles out from Eastland, witness, with a party, went there, found and arrested him. George Cook, a brother of the defendant, escaped from the officers at Eastland, and has not since been seen. Joe McGee lived in the witness's neighborhood, and owned the yoke of oxen, and was seen in company with the defendant a few days before the theft of the animals. He has been sent to the penitentiary for the theft of these animals, John Broach is under indictment for this theft, and is out on bond. Witness could not say that these parties were familiar with the stock of the country, but knows that they had seen his horse often enough to know it. Witness never saw the defendant in possession of his horse which was stolen on the night of March 27, 1882, and which was taken without the consent of the witness. An indictment for horse theft is now pending against the witness in the District Court of Dallas county, but witness asks no more than a trial as fair as he thinks defendant will get in this case.

Riley Pemberton was the next witness for the State. He testified that he lost a horse from his place near Collier's place, in

G

Dallas county, on the same night that Collier lost his. He saw the defendant and Joe McGee together, near his farm, on the Sunday before, and on the following Tuesday learned that they had gone west with a horse owned by defendant, and a yoke of bulls, which were worked as steers, owned by McGee. Witness started in pursuit, and near Arlington, in Tarrant county, met up with John Collier, on the same pursuit, and the two traveled on together. At Arlington they heard of their horses for the first time, but could get no description of the parties who had them in possession, nor of the exact time they passed through Arlington. Beyond Fort Worth witness and Collier got on the trail of the bulls, wagon and two persons. A day or two thereafter, and some distance beyond Fort Worth, they again heard of the horses, bulls and wagon, in possession of four persons who had camped one night on a small creek. Collier and witness separated at the forks of the road eight or nine miles from Eastland, each taking one of the forks. After riding along his route a short distance, the witness saw parties ahead, and, leaving the road and riding around them, the witness reached a point near the road ahead of them, and secreted himself so that he could see them as they passed. As they passed witness recognized the defendant and Joe McGee in the wagon, driving Collier's horse and another horse which the witness did not know. George Cook and John Broach came on behind the wagon, and were driving the bulls. They were riding horses which the witness did not know. The witness's horse was not in their possession. When the party had passed the witness, he again took the brush, passed them, rode rapidly into Eastland and notified the officers.

George Cook soon came into Eastland, and was arrested. Witness and the officers then went in quest of the other parties, and the wagon and stock. They found Joe McGee and John Broach with the wagon, camped a hundred or two yards off the road, and arrested the two men. Collier's horse, another one, the wagon and the bulls were in their possession. Neither McGee nor Broach claimed the Collier horse. Witness and the officers returned to Eastland with McGee and Broach, and found Collier, who had then reached town. George Cook escaped from the officers in Eastland, and has not been seen since. John Broach was released by the officers, over the protest of the witness, but has since been indicted in Dallas county and is now under bond. Collier and the officers went out and arrested the

defendant somewhere in the country. McGee and the defendant were brought to Dallas, and were indicted for this theft. McGee has been convicted and is now in the penitentiary.

Dave McGee testified, for the State, that he was a brother of Joe McGee, heretofore convicted and now serving a term in the penitentiary for this offense. At the time of this offense Joe McGee lived with his mother, in the neighborhood of the witnesses Collier and Pemberton. On the Sunday before this theft, the defendant came to the McGee house, and said that he had come for Joe to go west with him to Eastland county. They left for Eastland that morning, Joe taking with him, at defendant's request, a yoke of bulls he owned. Defendant had a gray horse with him when he came to the house. When the two left, they took with them Joe's bulls and the defendant's horse. Defendant said at the time that he had sent his brother, George Cook, to get a wagon in which he intended to work the bulls. Joe McGee owned a horse at that time, but it was lost. Witness saw no more of them until after their arrest and return to Dallas county.

J. W. Vincent was the first witness for the defense. He testified that some time in March, on Tuesday, he saw the defendant and a young man whom, from description, he supposes to have been John Broach, in camp on Sycamore creek. They had a yoke of cattle standing near a wagon. Defendant said they had no horses, but that his partners behind, who were going with him to a hog ranch in Eastland county, would bring along two or three. The witness saw the same two parties that night at a dance at the house of a Mrs. Deitz, who lives in the suburbs of Fort Worth.

Mrs. E. Deitz testified for the defendant that she lived in the suburbs of Fort Worth; that on Tuesday, March 28, she saw the defendant and John Broach at her house; that they returned that night as attendants upon a dance which occurred there at that time. Witness had known defendant seven or eight years.

Carrie Samuels, who attended the dance at Mrs. Deitz's, corroborated that witness.

Motion for new trial assailed the sufficiency of the evidence, and was overruled.

*Coombs & Gano,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.    That portion of the charge of the court which is specially complained of as being erroneous is the second paragraph, which is in these words, viz:    "All persons are principals who are guilty of acting together in the commission of an offense.    Where an offense has been committed, the true criterion for determining who are principals is, did the parties act together in the commission of the offense?    Was the act in pursuance of a common intent, and in pursuance of a previously formed design in which the minds of all united and concurred?    If so, then the law is that all are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design and intent of all; whether in point of fact all were actually bodily present on the ground where the offense actually took place or not."

It will be found upon examination that this charge is almost a literal copy of a charge given by the trial judge in *Scales* v. *The State*, 7 Texas Court of Appeals, 361.    In the opinion of Judge Clark in that case, he says, commenting upon the charge, "this instruction very clearly presented the law applicable to the case, and is in accord with the previous decisions of this court."    (Citing *Welsh* v. *The State*, 3 Texas Ct. App., 413.)

Again, in *Cohea* v. *The State*, 9 Texas Court of Appeals, 173, one of the cases mainly relied on by appellant in the brief of his counsel, the same learned judge says:    "It does not follow inevitably that any person who joins in the enterprise after the original caption is perfected, is necessarily a principal in such original caption.    The better doctrine seems to be that, in order to bring the latter within the category of a principal, he must have been concerned in the original theft.    (*The Commonwealth* v. *De Witt*, 10 Mass., 153.)    He need not be actually present at the taking, if the act was committed in pursuance of a common intent and previously formed design, in which his mind united and concurred with that of the actual taker."    (Citing *Welsh* v. *The State*, and *Scales* v. *The State, supra.*)

These decisions sufficiently support the correctness of the language used in the charge we have quoted, and may be regarded as settling the construction of Articles 74 and 76 of the Penal Code, in their application to parties who act together in the commission of an offense where any one or more are not actually or bodily present at the time of its perpetration.    It is true that "an accomplice is (*also*) one who is not present at the commission of an offense" (Penal Code, Art. 79), but it by no means

follows from this that all those connected with the commission of the offense who are not present are *ipso facto* accomplices. We are of opinion that the proper distinction between these two characters of offenders is this: The acts constituting an accomplice are auxiliaries only, all of which may be and are performed by him anterior and as inducements to the crime about to be committed (Penal Code, Arts. 79 to 85 inclusive); whilst the principal offender not only may perform some antecedent act in furtherance of the commission of the crime, but when it is actually committed is doing his part of the work assigned him in connection with the plan and furtherance of the common purpose, whether he be present where the main fact is to be accomplished or not. When the offense is committed, by the perpetration of different parts which constitute one entire whole, it is not necessary that the offenders should be in fact together at the perpetration of the offense to render them liable as principals. (*Heard* v. *The State,* 9 Texas Ct. App., 1.) In other words, an accomplice, under our statute, is one who has completed his offense before the crime is actually committed, and whose liability attaches after its commission, by virtue of his previous acts in bringing it about through the agency of or in connection with third parties. The principal offender acts his part individually, in furtherance of and during the consummation of the crime. Accomplices, under our Code, are what, at common law, were known as "accessories before the fact." (*McKeen* v. *The State,* 7 Texas Ct. App., 631; *Arnold* v. *The State,* 9 Texas Ct. App., 435; *Simms* v. *The State,* 10 Texas Ct. App., 131.) Principals, under our Code, are parties to the fact.

In the case before us, whilst in a legal point of view the charge of the court, as we have shown, was a correct enunciation of the law upon this point, we are of opinion that the evidence was not sufficient to support the verdict and judgment upon the ground of defendant's guilty complicity as a principal offender. The evidence before us lacks that probative force which carries with it the conviction that it is incapable of explanation upon any hypothesis other than that of the defendant's guilt.

Again, the evidence, so far as defendant's guilt is sought to be established, is wholly circumstantial. Such being the case, under repeated decisions it has been held error for the court to refuse, fail or omit to instruct the jury as to the law with reference to that character of testimony.

Because the evidence was insufficient, and because the charge of the court did not submit the law essential to the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered April 25, 1883.